UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NAUTILUS INSURANCE COMPANY,

       Plaintiff,                      Case No. 1:24-cv-10323

v.                                        Honorable Thomas L. Ludington
                                                United States District Judge

TRI-CITY SPORTS COMPLEX, LLC,
and CHRISTIE BECK, as next of friend
of HALLIE BECK,

       Defendants.
_____/

**OPINION AND ORDER (1) GRANTING PLAINTIFF NAUTILUS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, (2) ISSUING DECLARATORY RELIEF, AND (3) DENYING EVIDENTIARY MOTIONS AS MOOT**

In March 2022, Hallie Beck severely injured her knee during her high school's soccer tryouts at Tri-City Sports Complex, LLC in Auburn, Michigan. Due to that injury, Hallie's mother, Christie Beck, sued Tri-City as Hallie's next friend in state court for negligence on February 16, 2023. Soon after, Nautilus Insurance Company—which had issued a commercial insurance policy (the "Policy") to Tri-City for the period in which Hallie's injury occurred—brought this declaratory relief action against both Tri-City and Beck. Nautilus seeks a declaration that under the Policy, it has no duty to defend or indemnify Tri-City against Beck's negligence claim because a Participants Exclusion bars coverage over the claim.

Tri-City did not timely answer Nautilus's Complaint, so the Clerk of Court entered a default against it, leaving Beck to challenge Nautilus's declaratory relief claim. On January 28, 2025, Nautilus moved for summary judgment. It later filed three motions *in limine*, seeking evidentiary rulings in the event this case goes to trial. Beck filed two of her own motions *in limine*. As

explained below, Nautilus's Motion for Summary Judgment will be granted, and all motions *in limine* will be denied as moot.

## I.

### A.

Defendant Tri-City Sports Complex, LLC,[1] operates an indoor recreational facility—a dome—in Auburn, Michigan. ECF No. 25-1 at PageID.486. It permits people to rent space in that dome to conduct various activities. *Id.* As its name suggests, Tri-City accommodates athletic events, including practices and tryouts for competitive sports teams. *Id.* at PageID.486–87.

On March 19, 2021, Plaintiff Nautalis Insurance Company issued Tri-City a surplus line commercial insurance policy (the "Policy"). *See* ECF No. 25-1 at PageID.401. The Policy supplied general liability coverage to Tri-City for one year. *Id.* at PageID.411. As part of that coverage, the Policy provides that Nautalis would "pay all sums that [Defendant Tri-City] becomes legally obligated to pay as damages because of 'bodily injury' . . . to which" the Policy applied. *Id.* And under the Policy, if someone files suit seeking damages for covered bodily injuries, Nautalis has a "right and duty to defend [Tri-City]" in that suit. *Id.*

But the Policy also contains several exclusions that limit the general liability coverage. *See id.* at PageID.427–66. Key here is a "Participants" Exclusion. *Id.* at PageID.465. The Participants Exclusion removes from the Policy's coverage "'bodily injury' or medical payments to any 'Participant'" injured during a covered event if the injury occurred 'in the 'activity area'" as defined by the Policy. *Id.*

---

[1] Tri-City has changed its name to Shah Sports Facilities. ECF No. 25-1 at PageID.491. To avoid confusion, this Court will refer to it by its old name, Tri-City.

**B.**

Against that backdrop, Nouvel Catholic Central High School rented out half of Tri-City's dome to conduct varsity soccer tryouts on March 15, 2022. *See id.* at PageID.472, 528. To prepare, Tri-City cleaned and groomed the turf playing field where the tryouts would be held. *Id.* at PageID.508. It also sent Nouvel's coaches an email with waivers and the rules governing the facility's use—which were also posted on its website—so the coaches could share them with "their [tryout] participants." *Id.*

One of those participants was then-freshman Hallie Beck. *Id.* at PageID.472, 528. Indeed, Hallie attended Nouvel's March 15, 2022, soccer tryouts, where Nouvel held a scrimmage among the freshmen. *Id.* During that scrimmage, Hallie chased a ball, attempting to keep it in bounds. *Id.* at PageID.473. While doing so, she fell and slid over the metal grating for the dome's air vents—located just off the playing field in a walkway for parents—and seriously injured her knee. *See id.* at PageID.472–75, 506–07, 528–29, 537.

Based on that injury, Hallie's mother, Christie Beck, sued Tri-City as Hallie's next friend in state court for negligence on February 16, 2023. *Id.* at PageID.518–22. Because the injury occurred during the Policy's term, Nautilus retained a law firm to defend Tri-City against the negligence claim. *Id.* at PageID.540. But Nautilus reserved the right to disclaim or limit coverage and withdraw its defense of Tri-City. *Id.* at PageID.541.

On February 7, 2024, Nautilus filed this declaratory relief action against Tri-City and Christie Beck. ECF No. 1. Nautilus asserts that the Policy's Participants Exclusion bars coverage for the negligence claim in the underlying state lawsuit. *Id.* at PageID.5–8. As a result, Nautilus seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that it has no duty to defend or indemnify Tri-City from damages awarded against it in the state lawsuit because the

Participants Exclusion bars coverage. *Id.* at PageID.8. After Nautilus filed, the state court stayed proceedings pending resolution of this case. *See Hallie Beck v. Tri-City Sports Complex, LLC*, Case No. 2023-0000003140-NO (18th Cir. Ct. Bay Cnty., Mich.).

Tri-City did not timely answer Nautilus's Complaint here, so Nautilus applied for an entry of default against Tri-City on April 30, 2024. ECF No. 11. The next day, the Clerk of Court entered the default against Tri-City. ECF No. 12. Then, on January 28, 2025, Nautilus moved for summary judgment. ECF No. 23. It later filed two motions *in limine* seeking to bar certain evidence and preclude certain arguments at trial. ECF Nos. 28; 35.

## II.

Summary judgment is proper when no genuine dispute of material fact exists, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A material fact is one that "affect[s] the outcome of the suit under the governing law." *DeVooght v. City of Warren*, 157 F.4th 893, 899 (6th Cir. 2025) (citation modified). And a genuine dispute is a dispute that, based on the evidence presented, would allow a reasonable trier of fact "to rule in favor of the nonmoving party." *Id.* Thus, "[p]utting all of that together, Rule 56 asks whether the evidence is so one-sided that one party must prevail as a matter of law." *Id.* (citation modified).

When seeking summary judgment, the movant must identify parts of the record showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to "present significant probative evidence that will reveal that there is more than some metaphysical doubt as to the material facts." *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017) (citation modified). The mere existence of a scintilla of evidence supporting the nonmovant's position will not suffice to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

At this stage, courts cannot weigh the evidence presented. *Id.* at 249. Nor can courts assess the competency and credibility of witnesses. *Id.* at 255. Further, courts must also draw all reasonable inferences in favor of the nonmovant. *Finley v. Huss*, 102 F.4th 789, 804 (6th Cir. 2024). But courts need not accept facts blatantly contradicted by the record. *DeVooght*, 157 F.4th at 899–900.

### III.

At core, the Parties' dispute turns on the interpretation of the Policy's Participants Exclusion. Nautalis's argument in support of its Summary Judgment Motion is straightforward: it does not have a duty to defend or indemnify Tri-City because the Policy's Participants Exclusion bars coverage for the negligence claim in the underlying state case. *See* ECF No. 23 at PageID.340–47. In response, Beck contends that properly interpreted, the Participants Exclusion does not apply—meaning the Policy's coverage for bodily injuries extends to her negligence claim and triggers Nautalis's duty to defend and indemnify Tri-City. ECF No. 25 at PageID.389–97. For the reasons explained below, Nautilus is correct; the Participants Exclusion applies and bars coverage.

### A.

#### 1.

Under Michigan law, an insurer's duty to defend and duty to indemnify are separate but related duties. *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 480 (Mich. 1996). A duty to defend requires an insurer to provide legal counsel and pay for an insured's litigation costs in covered cases brought by third parties. *Safety Specialty Ins. Co. v. State Farm Fire & Cas. Co.*, 53 F.4th 1016, 1021 (6th Cir. 2022). Separately, a duty to indemnify requires the insurer "to pay the injured [third] party any damages awarded against the insured for" covered

loss. *Id.* These duties overlap because both only apply if the insurance policy covers the underlying claims against the insured. *Am. Bumper*, 550 N.W.2d at 481.

But despite that overlap, "the duty to defend is broader than the duty to indemnify." *Id.* The duty to defend applies to all covered claims, meritorious, frivolous, or otherwise; the duty to indemnify depends on policy coverage and an ultimate finding of liability. *Id.* at 481 n.12. In other words, if within the policy's scope of coverage, the "insurer may be obligated to defend so-called groundless suits—namely, suits . . . decided in favor of the insured." *Id.* (citation modified). Considering that framework, because the state case here has not yet concluded (so liability is not yet decided), this Court will train its attention away from the duty to indemnify and toward the broader duty to defend and the predicate coverage dispute. *See Safety Specialty*, 53 F.4th at 1024.

**2.**

The duty to defend's analytical framework makes its breadth more apparent. If a third party's allegations "against the policyholder even arguably come within the policy coverage," they trigger the insurer's duty to defend the policyholder. *Am. Bumper*, 550 N.W.2d at 481. In this way, the inquiry into whether an insurer has a duty to defend requires courts to interpret the relevant policy and compare its scope of coverage with the third party's allegations, assessing whether those allegations arguably fall within coverage. *See Auto-Owners Ins. Co. v. Martin*, 284 773 N.W.2d 29, 43 (Mich. Ct. App. 2009).

This inquiry is not limited to "the precise language" in the third party's complaint. *Detroit Edison Co. v. Michigan Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1981). Indeed, courts "must look beyond the allegations" in the third party's complaint "to determine whether coverage is possible." *N. Bank v. Cincinnati Ins. Companies*, 125 F.3d 983, 986 (6th Cir. 1997). And the insurer owes "a duty to defend until the claims against the policyholder are confined to those

theories outside the scope of coverage under the policy." *W. Bend Mut. Ins. Co. v. CPT Next Gen, Inc.*, 728 F. Supp. 3d 609, 618 (E.D. Mich. 2024).

Yet this broad duty has limits. Insurers need not defend "against claims for damage expressly excluded from policy coverage." *Meridian Mut. Ins. Co. v. Hunt*, 425 N.W.2d 111, 114 (Mich. Ct. App. 1988) (citing *Burton v. Travelers Ins. Co.*, 67 N.W.2d 54 (Mich. 1954)). Still, the insurer "bears the burden of proving that an exclusion precludes coverage." *Safety Specialty*, 53 F.4th at 1024. And exclusions are "construed in favor of the insured." *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992). That is, if an exclusion contains ambiguity, it is construed in favor of coverage. *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 919–20 (Mich. 1999). But insurers are not "liable for a risk" not assumed, so "clear and specific exclusions must be enforced." *Hunt v. Drielick*, 852 N.W.2d 562, 566 (Mich. 2014) (citation modified). As a result, where no ambiguity exists, courts must not create any; they must instead enforce the exclusion as written. *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999).

These principles yield a two-step interpretive inquiry for courts. At step one, courts interpret the insurance policy to determine whether the underlying claim arguably falls within the policy's general coverage. *Safety Specialty*, 53 F.4th at 1024 (citing *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (Mich. 1997)). At step two, if it does fall within general coverage, courts determine whether an exclusion unambiguously "applies to negate coverage." *Id.*

Here, Nautalis does not dispute that, absent an applicable exclusion, the Policy's general coverage applies to Beck's state-law negligence claim. *See* ECF No. 23 at PageID.334, 341. Rather, Nautalis contends that the Participants Exclusion negates coverage. *Id.* Thus, the analysis

below focuses only on step two—whether an exclusion unambiguously applies to negate coverage of Beck's negligence claim under the Policy.

**B.**

Move, now, to whether the Policy's Participants Exclusion applies. In Michigan, courts interpret insurance policies like any other contract. *Citizens Ins. Co. v. Pro-Seal Serv. Grp., Inc.*, 730 N.W.2d 682, 685 (Mich. 2007). Thus, courts must read a policy's terms as a whole and in context, giving undefined words their ordinary meaning. *Henderson*, 596 N.W.2d at 194–95.

Turning to the text, the Participants Exclusion provides the following: "This insurance does not apply to 'bodily injury' or medical payments to any 'participant' while in the 'activity area.'" ECF No. 25-1 at PageID.465. The Policy defines "participant" as "any person practicing, preparing or rehearsing for, instructing, participating or sparing in, any" applicable "event." *Id.* Synthesizing these provisions, for the Participants Exclusion to negate coverage for Hallie Beck's bodily injury, Nautalis must establish three things: (1) Beck was a "participant," (2) in an applicable "event," and (3) the injury occurred in the "activity area."

Here, only two of those elements are in dispute. Indeed, it is undisputed that if the other two elements are met, Nautalis can establish that Hallie Beck was a "participant" in Nouvel's March 15, 2022, soccer tryout. *See* ECF No. 23 at PageID.343; *see also generally* ECF No. 25. But Beck argues that Nautalis cannot establish the other two elements: that (1) Nouvel's March 15, 2022, soccer tryout constituted an "event" as defined by the Policy; or (2) the injury occurred in the "activity area" under the Policy's definition of that term. ECF No. 25 at PageID.390–97. These two elements are addressed in turn below.

**1.**

Begin with whether Nouvel's March 15, 2022, soccer tryouts constituted an "event" as defined by the Policy. They were.

The Policy defines "event" to mean "any activity of an athletic or sports, or entertainment nature of 'limited duration' that [Tri-City] manage[s], operate[s], or sponsor[s] . . . ." ECF No. 25-1 at PageID.465. Beck does not dispute Nautilus's assertion that Nouvel's soccer tryouts were "of limited duration" because they were "for a time period that can be established by a beginning and ending date." *Compare id. with* ECF Nos. 23; 25. Nor does she dispute that the tryouts were an "activity of an athletic or sports" nature. *See generally* ECF Nos. 23; 25. Instead, the dispute over the "event" element centers on whether Tri-City "manage[d], operate[d], or sponsor[ed]" Nouvel's soccer tryouts. *See* ECF No. 25 at PageID.390–94.

Because the disjunction "or" offsets that list of verbs, Tri-City's relationship with Nouvel's tryouts needs only to fall within the meaning of one of the three verbs. *Zwiker v. Lake Superior State Univ.*, 986 N.W.2d 427, 442 (Mich. Ct. App. 2022) ("The word 'or' is a disjunctive term used to express a choice between alternatives."); *see also* A. SCALIA & B. GARNER, *Reading Law: The Interpretation of Legal Texts* 116–19 (2012). Put differently, if Tri-City "managed" the tryouts, "operated" the tryouts, *or* "sponsored" the tryouts, the tryouts were a covered "event" under the Policy. Here, Tri-City "managed" Nouvel's March 15, 2022, soccer tryouts, satisfying the "events" element.

The Participants Exclusion does not define the term "manage," and it is not a term of art, so its ordinary meaning controls. *See Henderson*, 596 N.W.2d at 194–95. In Michigan, to

determine a term's ordinary meaning, "resort to a lay dictionary . . . is appropriate."[2] *Citizens Ins. Co.*, N.W.2d at 687 (citation modified). According to lay dictionaries, "manage," in this context, means to "handle, direct, govern, or control." *Manage*, RANDOM HOUSE COLLEGE DICTIONARY 811 (1st rev. ed. 1982); *accord Manage*, WEBSTER'S UNABRIDGED NEW INTERNATIONAL DICTIONARY (2d ed. 1934).

Under that ordinary definition, Tri-City managed Nouvel's tryouts by governing and exercising control over them. To that end, Tri-City governed Nouvel's use of the dome through rules and regulations posted on its website for all renters and separately distributed to Nouvel's coaches. *See* ECF No. 25-1 at PageID.508. In that same way, it exercised control over the tryouts. *See Divide Ins. Co. v. Hawaiian Kamali'i Inc.*, 371 F. Supp. 3d 811, 821 (D. Haw. 2019) (considering, among other things, whether the hosting entity had control over the "determination and enforcement of . . . rules and regulations" when assessing whether it managed or operated a particular event).

---

[2] Beck turns to *Black's Law Dictionary* to define the word "manage." *See* ECF No. 25 at PageID.393. That move is misplaced: *Black's Law Dictionary* is a specialized, legal dictionary, not a lay dictionary. Courts should only use "specialized dictionaries and caselaw to interpret *legal terms of art*." *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 956 (6th Cir. 2006) (emphasis added). By contrast, for a nontechnical term like "manage," Michigan law directs courts to use a "lay dictionary." *Citizens Ins. Co.*, N.W.2d at 687 (citation modified); *see also Minges Creek*, 442 F.3d at 956; *cf. King v. Pennsylvania Life Ins. Co.*, 470 F. App'x 439, 444 (6th Cir. 2012) (using legal dictionaries and treatises for a phrase with a legal meaning); *Bingham Ctr. Owner, LLC v. Comcast*, LLC, 603 F. Supp. 3d 545, 548 (E.D. Mich. 2022) (same).

Even so, Beck's argument lacks merit on its own terms. Applying *Black's* definition, Tri-City still managed Nouvel's tryouts. *Black's Law Dictionary* defines "manage," in relevant part, as: "1. To exercise executive, administrative, and supervisory powers," or "2. To conduct, control, carry on, or supervise." *Manage*, BLACK'S LAW DICTIONARY (12th ed. 2024). Simply put, distributing and posting rules and regulations for the dome's use, and, as a result, retaining the power to enforce them, constitutes "executive, administrative, and supervisory powers" or "control" over the tryouts.

Beck's arguments to the contrary do not alter the analysis. Beck first argues that tryouts were not an "event" because Tri-City did not directly distribute the governing rules to the participants; it sent them to Nouvel's coaches, who were responsible for passing them along. *See* ECF No. 25 at PageID.392–93. But how Tri-City's rules were distributed is immaterial—they governed Nouvel's use of the facility for the tryouts as a renter either way.

Beck also argues that Tri-City cannot satisfy the event element because it "lacked substantial control over the soccer" tryouts. *Id.* at PageID.390–91. As support, cites *Divide Ins. Co. v. Hawaiian Kamali'i Inc.*, 371 F. Supp. 3d 811 (D. Haw. 2019), which featured an exclusion that defined "event" the same way the Participants Exclusion does here. *Id.* Beck essentially argues that *Hawaiian Kamali'i* interpreted the "event" definition to require substantial control over the relevant activity, an open-ocean canoe race. *See id.*

*Hawaiian Kamali'i*, however, does not stand for that proposition. For starters, *Hawaiian Kamali'i* concluded only that the insured's substantial control over the canoe race's rules and attending personnel supported a finding that it satisfied the exclusion's definition of "event." 371 F. Supp. 3d at 822–23. It did not, as Beck argues, *require* substantial control over an activity to fulfill the definition of "event." Moreover, the Participants Exclusion's definition of "event" does not impose a "substantial control" requirement. *See* ECF No. 25-1 at PageID.465. It requires only that Tri-City "managed," "operated," or "sponsored" the tryouts. *Id.* And again, the ordinary meaning of managed is met here, nowhere integrating the term "substantial" into its definition.

In short, because Tri-City "managed" Nouvel's March 15, 2022, soccer tryouts, Nautilus has satisfied the "event" element under the Participants Exclusion. Thus, the only question remaining is whether Hallie Beck's knee injury occurred in the "activity area."

**2.**

Moving to that question, like the event element, Nautalis has fulfilled the "activity area" element under the Participants Exclusion. The Participants Exclusion defines "activity area" as "any site specifically set aside for the purpose of preparing for, participation in, or assembly before, during or after, any 'event.'" *See* ECF No. 25-1 at PageID.465. Such areas include, "but [are] not limited to, the arena, chute, corral, course, field, infield, path, pit, ring, road, sideline, stage, or track." *Id.*

Under that definition, Hallie Beck's injury occurred in the "activity area." Her knee injury occurred on a path just off the playing field as she fell while trying to keep the ball in bounds. *See id.* at PageID.472–75, 506–07, 528–29, 537. No doubt, that path was part of the area of the Tri-City facility that was "specifically set aside" for Nouvel's use in conducting its soccer tryouts. And the fact that the path was not on the playing field matters not—the definition plainly enumerates examples of activity areas that go beyond the playing field. *See id.* at PageID.465.

Still, Beck contends that the phrase "specifically set aside" is ambiguous, meaning it must be construed in favor of coverage. ECF No. 25 at PageID.395–97. To her point, *Nautilus Insurance Company v. Bike & Build, Inc.*, 340 F. Supp. 3d 399 (E.D. Pa. 2018), found that "specifically set aside" is ambiguous and can affect exclusion applicability in certain contexts. But Beck's reliance on *Bike & Build* is misplaced.

In *Bike & Build*, the insured organized a cross-country charity bike trip. *Id.* at 403. During the trip, a car struck two participants on the roadway that the insured selected for the trip. *Id.* The insured's policy contained the same participants exclusion at issue here. *Id.* at 421. The court determined that the phrase "specifically set aside" in the definition of "activity area" was ambiguous. *Id.* at 422. In so doing, it noted that "set aside" could mean one of two things: (1)

"something akin to selected or designated"; or (2) that the relevant "area be under the insured's control or reserved for the *insured*'s use." *Id.* And the court found that while the insured selected the bike route, nothing suggested that the roadway where the participants were struck was *reserved* for the insured's bike trip. *Id.* As a result, the court construed that ambiguity related to "activity area" in favor of coverage, determining that the exclusion did not apply. *Id.* at 423.

Here, the ambiguity identified in *Bike & Build* is irrelevant. Unlike in *Bike & Build*, under either meaning of "specifically set aside," the location of Hallie Beck's injury falls within the "activity area." As noted above, the path where she was injured was within the area designated for Nouvel's use in conducting its soccer tryouts. It was also within an area under the insured Tri-City's control. So the Participants Exclusion's definition of "activity area" contains no ambiguity that this Court could construe in favor of coverage—the Participants Exclusion negates coverage either way. Thus, Nautilus has met its burden in showing that the "activity area" element is satisfied.

***

In sum, the Participants Exclusion under the Policy that Nautilus issued to Tri-City applies and negates coverage over Beck's negligence claim against Tri-City. Indeed, Nautilus has shown that the two elements in dispute—the "event" and "activity area" elements—are satisfied. As a result, Nautilus's Motion for Summary Judgment, ECF No. 23, will be granted, and a judgment will be entered declaring that it has no duty to defend or indemnify Tri-City against Beck's claim in the underlying case.

### IV.

Accordingly, it is **ORDERED** that Plaintiff Nautalis Insurance Company's Motion for Summary Judgment, ECF No. 23, is **GRANTED**.

Further, it is **DECLARED** that under the Policy, Nautilus Insurance Company does not have a duty to defend or indemnify Tri-City Sports Complex, LLC, in *Hallie Beck v. Tri-City Sports Complex, LLC*, Case No. 2023-0000003140-NO (18th Cir. Ct. Bay Cnty., Mich.), because the Participants Exclusion in the Policy bars coverage.

Further, it is **ORDERED** that Plaintiff Nautalis Insurance Company's Motions *in Limine*, ECF Nos. 28; 35; 39, are **DENIED AS MOOT**.

Further, it is **ORDERED** that Defendant Christie Beck's Motions *in Limine*, ECF Nos. 40; 41, are **DENIED AS MOOT**.

**This is a final order and closes this case.**

Dated: January 29, 2026                                                   s/Thomas L. Ludington
                                                                          THOMAS L. LUDINGTON
                                                                          United States District Judge